UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSIAH SWING,<br>387 E. Nields Street<br>West Chester, PA 19382 | :<br>:<br>: |
| Plaintiff, | : CIVIL ACTION - LAW |
| - against - | :<br>: JURY TRIAL DEMANDED |
| AARON DAVIS,<br>JASON FRANCART,<br>JAMES GORMAN and<br>CARL MCINTYRE,<br>c/o West Chester Borough Police<br>Department,<br>401 E. Gay Street<br>West Chester, PA 19380 | :<br>:<br>:<br>:<br>:<br>:<br>: |
| | : No. |
| Defendants. | : |

## COMPLAINT

Plaintiff Josiah Swing, by his attorney, Barry H. Dyller of the Dyller Law Firm, for his Complaint alleges as follows:

## JURISDICTION AND VENUE

1. This action arises out of violations of 42 U.S.C. § 1983, and the common law.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. Venue is proper in this judicial district under 28

U.S.C. § 1391(b) because all defendants reside in this State and some of the defendants reside in this judicial district, and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE PARTIES

3. Plaintiff Josiah Swing ("Mr. Swing") was at all relevant times a resident of West Chester, in Chester County, Pennsylvania.

4. Defendants Aaron Davis ("Davis"), Jason Francart ("Francart"), James Gorman ("Gorman") and Carl McIntyre ("McIntyre") are police officers. Upon information and belief, at the time of the incident described below, all defendants were employed by the West Chester Borough Police Department.

5. Upon information and belief, the defendants are residents of the Commonwealth of Pennsylvania.

## BACKGROUND

### The Initial Vehicle Stop

6. On August 25, 2012, Mr. Swing was driving in a lawful manner in West Chester, Pennsylvania. In the car with Mr. Swing were his brother and a friend.

7. Defendant McIntyre decided to make a vehicle stop of Mr. Swing's car.

8. To make the vehicle stop, McIntyre had to make a right turn onto the street that Mr. Swing was already traveling on. Mr. Swing was at the next intersection and made a turn. McIntyre made the same turn, and followed Mr. Swing to a stop sign, which Mr. Swing obeyed completely. Both Mr. Swing and McIntyre then went through the intersection.

9. Because Mr. Swing's vehicle was ahead of McIntyre's vehicle, McIntyre had to catch up with Mr. Swing's vehicle. To do that, McIntyre had to drive faster than Mr. Swing was driving. The fastest McIntyre drove was 34 miles per hour, and that was only for a brief moment.

10. During this entire time, Mr. Swing was complying with all vehicle laws.

11. During the short time McIntyre was following Mr. Swing prior to even putting on his lights and pulling him over, McIntyre stated on the radio that he was "attempting a stop of a vehicle." Those words are police officer code for "this is not a normal stop." Those words also convey that backup police officers are needed.

12. McIntyre was thus on high alert. His signals to other police officers, including the other defendants, was that they too should be on high alert and ready for trouble.

13. After going through the intersection, Mr. Swing saw McIntyre attempting to pull him over. Mr. Swing put his right directional signal on, pulled over to the curb, and waited. The time was 4:28 p.m.

14. The entire time, from when Mr. Swing and McIntyre were on different streets, until the time McIntyre pulled Mr. Swing over, was 45 seconds.

## Events At the Vehicle Stop

15. McIntyre got out of his car. On foot, he approached Mr. Swing's vehicle. McIntyre had his hand on his gun.

16. It was a hot day. There were three adult males in the car.

17. With hand on gun, McIntyre approached Mr. Swing's vehicle. McIntyre told Mr. Swing he was not free to go and that he should turn off his vehicle.

18. Mr. Swing asked why he was pulled over. Mr. Swing also asked why had had to turn the car off, because he wanted to keep the air conditioning on.

19. West Chester Borough policy instructs its police officers to explain to motorists the reason for the vehicle stop.

20. Yet McIntyre took these legitimate questions, including one required by West Chester Borough policy, as "arguing."

21. Even though this was purportedly a simply traffic stop for a vehicle code violation, McIntyre returned to his police vehicle and radioed for back-up police officers.

22. About one minute and fifty-five seconds after McIntyre returned to his car, the passengers in Mr. Swing's vehicle got out of the car to smoke a cigarette.

23. Defendant Gorman had just arrived.

24. McIntyre and Gorman rushed over to the passengers.

25. McIntyre had his hand on his gun.

26. Gorman grabbed one of the passengers.

27. Neither of the passengers was making any sort of aggressive move, nor were they suspected of having committed any crime or vehicle offense.

28. Mr. Swing saw McIntyre and Gorman being extremely aggressive toward the two passengers.

29. Mr. Swing got out of the car.

30. McIntyre ran around the back of the car toward Mr. Swing. McIntyre had his hand on either his taser or his handgun.

31. Mr. Swing put his hands up to show that he was not being aggressive and was not a threat.

32. McIntyre pointed his gun or taser directly at Mr. Swing in an aggressive fashion.

33. McIntyre directed Mr. Swing to get back in his car. Mr. Swing complied, and got back in his car.

34. Simultaneously, the two passengers got back in the car as directed.

35. As the front seat passenger closed the door, Gorman pulled it back open and pointed his taser directly at that passenger.

6

36. Defendants Davis and Francart arrived at approximately this time.

37. By this time, it was clear to Mr. Swing and the passengers in his car that the defendant police officers were being extremely aggressive and threatening. What should have been a routine traffic stop now had four police officers, pointing tasers and handguns.

38. Further, the directions to Mr. Swing and the passengers were contradictory, in that they were ordered to get in the car and then when they complied defendants were highly aggressive to them, and ordered them out of the car at gunpoint.

39. Mr. Swing was scared by defendants' irrational and threatening behavior, which had escalated a routine traffic stop into a violent and dangerous encounter.

40. Mr. Swing asked the defendants to explain what they wanted. According to McIntyre's police report, Mr. Swing's words were "talk to me."

41. Instead of talking to Mr. Swing and explaining what they wanted, defendants took Mr. Swing's reasonable request – his speech – as somehow improper or illegal.

7

42. Defendants continued to escalate the situation. Francart shot Mr. Swing in the chest with his taser. Francart, McIntyre and Davis pulled Mr. Swing out of his car and slammed him to the ground. They handcuffed Mr. Swing.

43. Gorman and one of the other officers then had the two passengers get out of the car. They used unreasonable and excessive force on one of the passengers. They handcuffed both passengers.

## Defendants' Charges Against Mr. Swing

44. To cover up their illegal behavior toward Mr. Swing, defendants charged, and conspired with each other to charge, Mr. Swing, with various crimes. Defendants initially charged Mr. Swing with the crimes of Resisting Arrest Or Other Law Enforcement, 18 Pa.C.S. § 5104, a misdemeanor of the second degree, and Disorderly Conduct, 18 Pa.C.S. § 5503(a)(4), a misdemeanor of the third degree, and the summary vehicle offenses of Careless Driving, 75 Pa.C.S. § 3714 and Obscured License Plate, 75 Pa.C.S. § 1332(b)(3). There was no probable cause to charge Mr. Swing with any of these offenses, with the possible exception of the summary offense of having an obscured license plate.

45. At a preliminary hearing held on October 18, 2012, , the Commonwealth withdrew the charge of Resisting Arrest, and added the charge of Obstructing Administration of Law or Other Governmental Function, 18 Pa.C.S. § 5101, a misdemeanor of the second degree .

46. After having withdrawn the charge of Resisting Arrest, the Commonwealth refiled the same charge. Mr. Swing thus faced the misdemeanor charges of Obstructing Administration of Law or Other Governmental Function, Resisting Arrest, and Disorderly Conduct. He also faced the summary vehicle offenses of Careless Driving and having an Obstructed License Plate.

47. After much pre-trial litigation, the case went to trial. Shortly before trial, the Commonwealth withdrew the charge of Obstructing Administration of Law or Other Governmental Function, 18 Pa.C.S. § 5101.

48. At a jury trial in the Court of Common Pleas in June 2014, after the Commonwealth presented all of its evidence, the trial judge granted Mr. Swing's motion for judgment of acquittal with respect to the charge of Resisting Arrest Or Other Law Enforcement, 18 Pa.C.S. § 5104.

49. The jury then found Mr. Swing not guilty of Disorderly Conduct, 18 Pa.C.S. § 5503(a)(4).

9

50. In Pennsylvania, judges decide summary offenses. The trial judge found Mr. Swing not guilty of the summary vehicle offense of Careless Driving, 75 Pa.C.S. § 3714, and guilty of the summary offense of Obscured License Plate, 75 Pa.C.S. § 1332(b)(3).

Damages

51. As a result of all of defendants' actions described above, including their use of excessive and unreasonable force, and their arrest and prosecution of Mr. Swing without probable cause, Mr. Swing suffered damage.

## COUNT ONE
## (42 U.S.C. § 1983)

52. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 51 as if fully repeated herein.

53. Defendants' use of force as set forth above constituted an unreasonable seizure under the Fourth Amendment to the United States Constitution. In addition, such conduct constituted retaliation for Mr. Swing's exercise of his First Amendment rights. Further, such conduct constituted a deprivation of Mr. Swing's Due Process rights under the Fourteenth Amendment to the United States Constitution.

10

54. Defendants' conduct therefore was a deprivation, under color of state law, of rights guaranteed to Mr. Swing under the First, Fourth and Fourteenth Amendments to the United States Constitution.

55. As a result of defendants' violations of Mr. Swing's Constitutional rights, Mr. Swing suffered substantial injuries and damage.

## COUNT TWO
## (42 U.S.C. § 1983)

56. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 55 as if fully repeated herein.

57. Defendants arrested and/or caused Mr. Swing to be arrested, without probable cause, and in retaliation for Mr. Swing's speech. They thus seized and prosecuted Mr. Swing in violation of the First and Fourth Amendments to the United States Constitution. In addition, defendants' conduct constituted a deprivation of Mr. Swing's Due Process rights under the Fourteenth Amendment to the United States Constitution.

58. Defendants' conduct therefore was a deprivation, under color of state law, of rights guaranteed to Mr. Swing under the First, Fourth and Fourteenth Amendments to the United States Constitution.

59. As a result of defendants' violations of Mr. Swing's Constitutional rights, Mr. Swing suffered substantial injuries and damage.

## COUNT THREE
### (Assault)

60. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 59 as if fully repeated herein.

61. Defendants intended to put Mr. Swing in reasonable and immediate apprehension of a harmful or offensive contact with his body.

62. As a result of defendants' actions, Mr. Swing was put in reasonable and immediate apprehension of such contact.

## COUNT FOUR
### (Battery)

63. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 62 as if fully repeated herein.

64. Defendants committed the acts described above with the intent to cause a harmful or offensive contact with Mr. Swing's body and/or with the intent to put Mr. Swing in reasonable and immediate apprehension of a harmful or offensive contact with his body.

65. Defendants' actions directly and indirectly resulted in a harmful and/or offensive contact with Mr. Swing's body.

## COUNT FIVE
### (Malicious Prosecution)

66. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 65 as if fully repeated herein.

67. Defendants caused criminal proceedings to be initiated against Mr. Swing, resulting in Mr. Swing's arrest.

68. Defendants caused such criminal proceedings to be initiated without probable cause.

69. Defendants initiated such criminal proceedings with malice.

70. The criminal proceedings terminated in favor of the plaintiff.

71. Defendants' initiation of the criminal charges against Mr. Swing proximately caused damage to Mr. Swing.

## COUNT SIX
### (Intentional Infliction of Emotional Distress)

72. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 71 as if fully repeated herein.

73. Defendants, by their extreme and outrageous conduct, intentionally or recklessly caused Mr. Swing to suffer severe emotional distress and bodily harm.

WHEREFORE, plaintiff demands judgment as follows:

A. For Counts One through Six, an amount to be determined at trial, including punitive damages, plus interest;

B. For plaintiff's attorneys' fees, pursuant to 42 U.S.C. § 1988;

C. For the costs and disbursements incurred in this action; and

D. For such other and further relief as the Court deems just and proper.

DYLLER LAW FIRM
/s/ Barry H. Dyller
PA Bar: 65084
Attorney for Plaintiff
Gettysburg House
88 North Franklin Street
Wilkes-Barre, PA 18701
(570) 829-4860

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.